UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THERESA WINSTEAD-WALTERS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:19-cv-797

Bowman, M.J.

**MEMORANDUM OF OPINION
AND DECISION**

Plaintiff Theresa Winstead-Walters filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both which the Defendant disputes. The parties have consented to disposition by the Magistrate Judge. (Doc. 8). For the reasons explained below, I conclude that the ALJ's finding of non-disability is AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.    Summary of Administrative Record**

In January 2017, Plaintiff filed applications for Disability Insurance Benefits (DIB) alleging a disability onset date of July 31, 2015, due to mental and physical impairments. (Tr. 165-166). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On January 24, 2019, ALJ Matthew Winfrey held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 48-76). On February 11, 2019, the ALJ issued a partially favorable decision finding

1

that Plaintiff was disabled as of May 10, 2017, but not before that date. (Tr. 422-436). Plaintiff now seeks judicial review of the denial of her application for benefits before May 10, 2017.

Plaintiff was born in 1958 and was considered an individual of advanced age for Social Security purposes on the alleged disability on set date. She has a high school education and past relevant work as an appointment clerk.

Based upon the record and testimony presented at the hearing, the ALJ found that prior to May 10, 2017, Plaintiff had the following severe impairments: "lumbar degenerative disc disease, cervical degenerative disc disease, and bony deformity of the right wrist. (Tr. 425 ). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that prior to May 10, 2017, Plaintiff retains the following residual functional capacity ("RFC") to sedentary work with the following limitations:

> Occasionally climbing ramps or stairs; never climbing ladders, ropes or scaffolds; frequently balancing, kneeling, and crouching; occasionally stopping and crawling; no exposure to unprotected heights; frequent handling and fingering on the right; and requires a cane for ambulation.

(Tr. 427). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that prior to May 10, 2017, Plaintiff was able to perform her past relevant work as an appointment clerk. (Tr. 434). Accordingly, the ALJ determined that Plaintiff is not under disability, prior to May 10, 2017 as defined in the Social Security Regulations, and is not entitled to DIB *Id*.

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by 1) failing to find that Plaintiff's anxiety and fatigue were severe impairments prior to May 10, 2017; and 2) improperly evaluating the opinion of Dr. Bolz by failing to find any limitation for overhead reaching prior to May 10, 2017. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's decision is supported by Substantial Evidence

*1. Step-Two Analysis*

Plaintiff argues first that the ALJ erred because he did not find her anxiety and fatigue to be severe impairments prior to May 10, 2017. Plaintiff's contention is unavailing.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

In his step-two finding, the ALJ noted that prior to May 10, 2017, Plaintiff also had several impairments he found to be non-severe. (Tr. 425-426). However, the ALJ found that there is no evidence that any of Plaintiff's non-severe impairments imposed more than minimal functional limitations on the Plaintiff's ability to perform work related activity. Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

Regardless, even if the Court found the ALJ erred, errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837

F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments prior to May 10, 2017, including lumbar degenerative disc disease, cervical degenerative disc disease, and bony deformity of the right wrist and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider Plaintiff's anxiety and fatigue as "severe" at Step 2 of the sequential analysis, will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. As stated above, the ALJ found that prior to May 10, 2017, Plaintiff had several severe impairments. (Tr. 425). He also discussed Plaintiff's mental impairments, including depression, and explained his finding that they were not medically determinable or severe impairments. (Tr. 425-426). In this regard, the ALJ considered the four broad functional areas in which a claimant's degree of functional limitation was rated (paragraph B criteria): understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself, and found that plaintiff had only mild limitations in all areas (Tr. 425-26). See 20 C.F.R. § 404.1520a(c)(3)-(4). The ALJ also noted that state agency psychologist, Mary K. Hill, Ph.D., opined that Plaintiff had no severe mental impairments and he gave Dr. Hill's opinion great weight for the time period prior to May 10, 2017 (Tr. 103-04, 430).

As noted by the Commissioner, the purpose of the severity inquiry at the second step of the sequential disability evaluation process is merely to screen out claims that are medically groundless. See *Higgs v. Bo*wen, 880 F.2d 860, 863 (6th Cir. 1988) ("as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."). Where an ALJ determines that one or more impairments is severe at step two and proceeds with the sequential process, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. See *Maziarz*, 837 F.2d at 244 (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Thus, Plaintiff has not established reversible error because the ALJ did not "screen out" her claim at step two. Rather, he found that Plaintiff had severe impairments at step two and proceeded to the remaining steps of the sequential evaluation process, and explained his reasons for finding that Plaintiff did not have severe mental impairments until May 10, 2017. (Tr. 425-26, 430-34).

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

2. *Evaluation of Opinion Evidence*

Plaintiff argues next that the ALJ erred in evaluating the opinion of state agency physician, Dr. Bolz and by failing to find any limitation for overhead reaching prior to May 10, 2017. More specifically, Plaintiff contends that the ALJ failed to adequately assess the opinions from the state agency physicians William Bolz, M.D., and Leeanne M. Bertani, M.D.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6) ). Upon careful review and as explained below, the undersigned finds, that the ALJ's evaluation of the opinion evidence comports with Agency regulations and controlling law.

Here, the ALJ considered the findings of Dr. Bolz, who opined that Plaintiff could perform light work with frequent climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch but could never crawl; and was limited to occasional overhead reaching bilaterally and was to avoid all exposure to hazards. (Tr. 91-93, 430). The ALJ also considered the assessment from Dr. Bertani, who also reviewed the evidence and generally affirmed Dr. Bolz's assessment for a reduced range of light work but further limited Plaintiff to occasional stooping and

8

crawling, but did not assess limitations for overhead reaching and opined that Plaintiff was to avoid concentrated exposure to hazards. (Tr. 106-07, 430).

As noted above, Plaintiff argues that the ALJ erred because he did not adopt Dr. Bolz's opinion that her overhead reaching was limited to occasional. However, the ALJ reasonably explained why he gave little weight to the opinions of Drs. Bolz and Bertani, both before and after the established onset date, because they were not consistent with the evidence as a whole. (Tr. 430). In this regard, the ALJ noted that objective evidence of treatment for neck and back pain, as well as evidence of a bony deformity of the right wrist, required further limitation to sedentary work, use of a cane for ambulation, and frequent handling and fingering on the right. (Tr. 430).

The ALJ's decision is substantially supported in this regard. As noted above, Dr. Bertani's did not include limitations for overhead reaching and therefore was inconsistent with Dr. Bolz' opinion. See 20 C.F.R. § 404.1527(c)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Furthermore, there was no testimony at the administrative hearing relating to any limitations for overhead reaching; nor does Plaintiff provide any evidence or argument that such a finding would prevent her from performing her past relevant work as found by the ALJ. *See Gray v. Astrue*, 4:09–CV– 01468, 2010 WL 2106200 (N.D.Ohio Mar.31, 2010) report and recommendation adopted sub nom. *Gray v. Comm'r of Soc. Sec.*, 4:09CV1468, 2010 WL 2106196 (N.D.Ohio May 25, 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the

9

court to put flesh on its bones.")). *See also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir.2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal....").

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS THEREFORE ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case is **CLOSED.**

        *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge